May I please report, my name is Jack Pelzer, here today representing the Appalachia State Contracting. The first question before this court is whether this court should even exercise jurisdiction over a purely state-lawed conflict between a litigant and its former attorney. After a voluntary settlement agreement and dismissal of the underlying suit that arose under the patent jurisdiction. In this case there has never been any adjudication by the District Court of any Section 1338 claim on the merits. And for that reason we believe that this court's decisions in the Nielsen case and the Gronholz case militate in favor of declining jurisdiction in this case and transferring to the Eleventh Circuit Court of Appeals. There was a dismissal with prejudice in this case which has some facial similarity with the Zenith decision which is the only case upon which Mr. Ross relies. However, the dismissal with prejudice in this case did not operate as an adjudication on the merits. It was solely pursuant to the settlement agreement between my clients and the State of Florida in order to provide the State of Florida with the appropriate and necessary finality of the settlement agreement. It did not purport and did not in fact operate to dismiss any of the claims that were made. In fact if we were to try to articulate what the holding would be if we were going to assume that this dismissal with prejudice was in fact an adjudication on the merits, we would be hard pressed to say what that adjudication was because of course it was the plaintiff's claims that were dismissed with prejudice yet pursuant to the terms of the settlement agreement the plaintiff was paid money and the patent rights were recognized. So it's very difficult to say what that determination would have been if there was one. What about the Rosenberg case and his suggestion that that case spells out the recovery for the remaining attorney when there's been a discharge without cause and that he was entitled to the entire contingent fee less quantum merit recovery for his, if you want to call him joint venture? Your Honor, we have to get back to what the claim of lien was that was in front of the magistrate. What Mr. Ross sought in his claim of lien in all of the litigation in front of the magistrate was not an award of what was owed to the joint venture. In fact what he sought was an award of what was owed to him. Well, I mean I think what he's saying is that I was owed the entire amount because the other attorney was entitled to require under quantum merit that portion of the contingent fee represented by that theory, but that I got the rest of it. And the Rosenberg case does seem to lend some support to that. So what's the answer to that? It would, Your Honor, if we were in a situation where there were successive attorneys. And before I get to that point, and I will address that on the merits, first I would point out that this whole argument that Mr. Ross was entitled to the entire joint venture fee and that he should then turn around and account to Mr. Farrow, his co-counsel, was an argument that was made for the first time in objections to the magistrate's report and recommendations. This was not an issue that was tried or pled and therefore was weighed. But addressing Rosenberg in its fact pattern now, the Rosenberg case deals with the circumstance where we have successive attorneys. One attorney handling the case and then discharged. Then second attorney comes in and takes over the case and has also a contingency fee agreement, same as the first attorney. Under those circumstances, the court held that the second attorney should not be penalized by the client's decision to discharge the first attorney and the obligation to pay the first attorney a quantum merit fee does not diminish the second attorney's entitlement to the full contingency fee. Completely different factual pattern from what we have here where the two attorneys were working simultaneously as co-counsel and the magistrate found it as a joint venture. And again, we come back to the fact that the magistrate was asked to determine not what the joint venture was entitled to so that they could then do an accounting between themselves instead of the magistrate. I'm confused. I thought the Rosenberg case involved a situation in which two attorneys had been employed under a contingency fee contract and one had been discharged without cost. Am I misreading the case? I don't believe that's correct, Your Honor. The Rosenberg case, in my recollection of it, is that this was a successive representation case. One attorney representing the client was discharged. The second attorney was thereafter retained under a contingency fee agreement. Now, certainly Mr. Ross's argument of the case wouldn't lead you to note that factual distinction, but that is the factual pattern in the Rosenberg case. So if I could jump back to the jurisdictional point for one moment because this court did ask us to address the Supreme Court's decision in Coconin. In Coconin, the Supreme Court decided that a district court does not have automatic jurisdiction. Why are you so interested in having this case dismissed for warranted jurisdiction when you're the prevailing party? Well, Your Honor, only because this court asked us to address that question and particularly did ask us to address the Coconin case. Frankly, what I would like to see, if I had my druthers, would be a simple one-word affirmative, and I would be very happy with that. But I do only want to address the jurisdictional issue because this court requested that we do so. And that is why, specifically, we were asked to address the Coconin case. In that case, where the Supreme Court held that a district court does not have the inherent power to adjudicate an enforcement of a settlement agreement if the district court did not retain any jurisdiction to do so and didn't otherwise have independent jurisdiction to do so. In this case, the complaint was dismissed with prejudice. Does that... But for the fact that the court had in its registry the $10 million or so that was posted as a bond in connection with the prior appeal to this court, that would have ended it. If that $10 million was not in the registry of this court, then the district court could never have adjudicated this charging under Coconin. It would have completely lacked jurisdiction to deal with that purely state law claim. The only reason why the court had jurisdiction, ancillary jurisdiction, to address this purely state law claim is because it had this $10 million in its registry and it needed to disperse it. And different parties were making claims to that money. So our position is that the jurisdiction that the court was exercising then, after the underlying patent dispute had been completely and totally resolved, and now we're dealing with different issues, different parties, different theories, different beliefs, the only jurisdiction the district court had had to be ancillary jurisdiction under 1367. And therefore, applying the logic of this court's cases in Nielsen and Gronholz, unfortunately this court lacks jurisdiction. Although, as I said, I would prefer to have an affirmative than a transitive. And the case ought to go to the 11th Circuit as opposed to the state courts, is your submission? I beg your pardon? And the case should be in the 11th Circuit. It's still a federal case, but you say it's not thus. And you're not suggesting that it ought to be adjudicated by the state courts of Florida? No, Your Honor, I would not. If the bond money had been dispersed prior to or at the time of the dispute, then I would say this should have been in Broward County Circuit Court rather than a federal district court at all. So the result of that would be that your recovery would be vacated also, right? No, Your Honor. Because we did have jurisdiction in the district court, because the money was in the registry of the court. The relief that we're requesting would not initiate the relief that we've received from the district court, would not take that away in any way. Really? How? I don't understand. Because all we would have then would be a transfer from this court to the 11th Circuit. We're dealing with a hypothetical situation. If that bond money had not been there, then it should have been. Wait a second. I don't understand how, if the district court had no jurisdiction, you're suggesting that it had jurisdiction, but it was diversity jurisdiction? No, I would say that it's ancillary jurisdiction. It's not diversity, yes. Oh, so the district court had jurisdiction, but the appeal should be out of the 11th Circuit. That's exactly right, Your Honor. Although, again, as I say, I would much prefer to have an affirmation than a transfer, but I'm trying to answer the court's question as honestly as possible. But coming back to the Rosenberg case. Yes, Your Honor. The Rosenberg case, doesn't it stand for the proposition that Farrell was only entitled to quantum narrow recovery? Why doesn't it stand for that proposition? Whether it's a successive representation or a concurrent representation, it doesn't seem to make any difference. It says that when you're discharged without cause and you had a contingent fee agreement, all you get is quantum narrow recovery. That's all he was entitled to, right? There's a distinct question as to whether or not we may have overpaid Mr. Farrell when we settled with him. No, no, but what's the answer to the question? Under Florida law, was he entitled to anything more than quantum narrow recovery? If he was discharged without cause, then the answer to that is no, he was not entitled to more than that. Okay, so based on that proposition, then why isn't Ross entitled to the rest? Because Ross is only entitled to what he was entitled to based on the claim of lien that he only claimed for his own fees. He did not claim for Mr. Ross's fees. He did not claim for a joint venture's fees. But he didn't have any claim for Mr. Ross's fees. Mr. Ross wasn't entitled to anything except quantum narrow recovery. The question is, when you have a contingent fee arrangement like this, and one person is discharged and the other person continues with the representation, performs the rest of the services, why isn't he entitled to the contingent fee less the He received his full contingency fee. All he was entitled to was one-half of one-third. And this is because of the agreement between Mr. Farrow and Mr. Ross, the 50-50 split? That's correct, Your Honor, but also the fee arrangement between the two lawyers and the client, the state contracting, was that each of these attorneys was entitled to one-half of one-third. And so when he asked for and received his fee under this agreement, he got one-half of one-third. He did not get It does not seem unfair that if there's, let's say there's a contingent fee agreement for a third. One lawyer performs services for a week, and then he's discharged without cause. The other guy goes on for years and performs the rest of the services. You're saying that he can only get half of it. He can't get the entire contingent fee. Well, it depends on what he asks for, Your Honor. But I'm glad you asked the question, is it unfair? Because these cases all sound in equity. In Florida, an attorney's charge only always sounds in equity. In this case, it is not unfair. It is not unfair because at the end of the day, once all of the hours of Mr. Ross and Mr. Farrow are totaled up next to each other, from the beginning of the litigation through the end, including that period of time after Mr. Farrow was discharged, their hours in the case were roughly equal. But address my hypothetical. We have a situation where there's a contingent fee contract. One lawyer works for a week. He's discharged. He's entitled to quantum merit recovery. You agree he's entitled to quantum merit recovery for whatever hours he put in for that week and nothing more. The other lawyer goes on, and he handles the case for years. There's a successful outcome. What's the basis for saying that he doesn't get the contingent fee less than quantum merit recovery? How is that fair? Well, actually, Your Honor, he would get the entire contingent fee, not less than quantum merit recovery, and that would be fair under those circumstances. What do you mean he'd get the entire? He would be entitled to the full contingency fee without deduction for the quantum merit fee for whatever services were performed during that one week. And that would be fair under those circumstances. He would get what? I'm sorry. If he had a separate contract with the client. No, not separate contract. They have a joint contract. Just like this case, one of them is discharged in the first week. The other one goes on for years and performs the rest of the contract. Under the theory of this case, that person would only get half the contingent fee. That's just not right, is it? Under those circumstances, Your Honor, I would tend to agree with you, but that's when we're trying to do equity, and that's what the magistrate was attempting to do here, was to do equity as Florida law requires to be done in a charging lien case. I don't read the decision as doing that. I read the decision as saying that because there was a 50-50 split, he only gets 50 percent regardless, and he relies on death cases to say that he doesn't get any more than 50-50, even though one lawyer's gone from the case. In this case, Your Honor, the magistrate expressly noted at several points in its report and recommendations that it was applying equity jurisdiction and equity principles. I understand, but isn't my description of what he held correct? That he says that because there was a 50-50 split, one person is gone. It's just like the death cases, and therefore, the remaining person only gets half of it. That each lawyer is still entitled to 50 percent of the contingent fee. Isn't that what he held? Well, that was the result. Yes, Your Honor. I apologize. I'm not sure I'm understanding the question under the fact pattern that we have here because the— Well, what I'm suggesting is that the magistrate's decision is based on an error of law, that he is failing to take account of the Rosenberg case and to recognize that Farrell was only entitled to quantum merit recovery and not, as the magistrate held, a 50 percent recovery. Mr. Farrell, again, as I conceded before, may very well have been overpaid in this case under that formulation in Rosenberg, but state contracting did equity in this case. Well, wait a minute. Setting aside the equity, because I do think that's a little bit of a red herring here with respect to the strictly legal component of the analysis of where the fee ought to be, assume for a moment that the 50 percent share would be inequitable. But nonetheless, had there—if I understand your argument, it is predicated on the agreement between Ross and Farrell, the express, or at least found to be express, understanding that each would have 50 percent share, that at that moment, that that agreement was executed, that Ross lost his right to any more than a one-half share of the claim to Farrell. Strictly applying the contract? Strictly as a matter of— That's correct. All right. And your support for that? Do you have a Florida case that stands for that proposition? Well, in that case, Your Honor, it's simply a matter of what does the contract say? We're not applying any common law, then, or even any— This is a contract—now, let's assume for a moment that this is not part of you and the joint venture, but only a contract between Farrell and Ross. So as far as you're concerned, you owe one-third to the joint venture, but the question really comes to this. Are you entitled to take advantage of the fact, and thereby reduce your exposure to the fee, of the fact that Ross and Farrell have engaged in this side arrangement? And if so, what authority is there for that? First of all, I'll answer that point by saying that 4-1.5G provides that any division between attorneys who are not affiliated with the firm must be in writing and agreed to by the client or be proportionate to the amount of work performed. And that is read into every contingency fee contract entered into in the state of Florida. So I would say that the agreement between state contracting and Ross and Farrell, however you define the relationship, was that the fee would be divided between them. Since they didn't enter into any written agreement that was signed by us, it was agreed to be divided proportionate to the amount of time that they spent. And the magistrate found that the amount of time they spent was roughly equal, therefore 50-50. Where do you find that? That's Rule 4-1.5G. No, no. Where do you find that in this case the amount of time spent was roughly equal? I don't remember that finding. The magistrate made that finding and all you have to do is Where? All you have to do, Your Honor, is Where? Where? Show me in the record where he made that finding. No, it's from the The page I don't have the page in front of me, Your Honor, but it's in the last part of the reporting recommendations where the magistrate first finds what Mr. Farrell received, which was the one-third, the $2,000,000.666 less his hours, which is simply $100 per hour, and then what Mr. Ross obtained, which again was according to the same formula, the same $100 per hour. And since the deduction from each part of his third was roughly equal, that's how you know the hours were roughly equal. That's what was billed by Mr. Ross and Mr. Farrell to state contracting and was paid by state contracting, roughly equal amounts, approximately $200,000 each. But That's the only evidence that the contribution was equal, that the number of hours charged was equal? That's correct, Your Honor, and that's what 4-1.5 provides. Not any theory such as Mr. Ross put out that you have to go by the number of pleadings signed. That was properly rejected by the magistrate, nor any other kind of subjective analysis. It's the amount of time and effort that is put in, and that goes by hours. I do want to dispel any possible notion that this court might have that state contracting has paid one dime less than the full one-third contingency in this case. If you total up the amounts that were paid to Mr. Ross and Mr. Farrell, they paid that exact amount. Yeah, but under your theory, you overpaid Farrell, and you would get away with paying less than the one-third contingent fee. What you've told me is that what you should have paid Farrell was just quantum error, and that Ross should be limited to half the contingent fee. And under those circumstances, if Farrell had been properly paid under quantum error, you would have ended up paying less than the one-third contingent fee, correct? We're assuming that Mr. Farrell, under that circumstance, was only entitled to quantum error. We were settling a disputed claim. He may have been entitled to the quantum error. Yeah, yeah, but under the Rosenberg case, under this theory, you've agreed that the Rosenberg case limited Farrell to quantum error at recovery. You would have to pay less than the total amount of the contingent fee. You'd only have to pay one-half the contingent fee to Ross and quantum error it to Farrell, and you'd keep the rest, right? If we had acted inequitably in that fashion, then that might have been the circumstance. But again, we did not act inequitably in any respect with regard to Mr. Ross or Mr. Farrell, but not with respect to Mr. Ross because, again, he was restricted to one-half or one-third. That's all he requested was what he was entitled to, not what anyone else was entitled to. Those reasons we ask that you affirm. Thank you, Mr. Paltrow. Case is submitted.